IN THI

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

### JUNE TERM, 1885.

---

### ANDREW FAGAN v. STATE.

A sale of beer, ale, &c., by the quart or in larger measure, to be drunk on the premises of the vendor, is not prohibited by the statute.

---

On error to Morris Quarter Sessions.

Argued at February Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *Henry C. Pitney.*

For the defendant, *Willard W. Cutler.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an indictment for keeping a disorderly house, and the error alleged consists in the trial judge's charge to the jury that the offence laid was

175

proved if it appeared that the defendant sold beer by the measure of a quart or over, and which was drunk upon his premises.

My examination of the statutes on this subject has led me to the conclusion that such instruction is not to be justified. The language of the act touching this particular is this: " That it shall not be lawful to sell ale, strong beer, ·lager beer, porter, wine or other malt liquors, (except where the same is compounded and sold as a medicine,) in quantities less than a quart, if the same is drank on ' or about the premises where sold, in the State of New Jersey, without a license first had," &c.    Rev., p. 494, § 52.

This provision is ungrammatically expressed, but its words are clear and unambiguous, and they declare that a sale of the liquors specified, in a quantity less than a quart, is prohibited if the same is drunk on or near the premises of the vendor. The question is whether, by construction, the expression, " in quantities less than a quart," can be struck out of the clause. I am at a loss to see how such a course could be vindicated. The statute nowhere prohibits the sale of these liquors except when they are sold by the small measure and are to be consumed at the place of sale, and it is quite impossible to say that such a restriction may not have appeared to the lawmakers all that was reasonably necessary.    They may have thought that social interests were sufficiently secured by a restriction on the sale of these beverages in small quantities when such beverages were to be drunk in places of public resort.    In the absence of experience it was, perhaps, not irrational to conclude that sales of these liquors in a measure exceeding that of a quart would be infrequent, and that consequently such sales did not require repression.    It is obvious, therefore, that this section of the act cannot be mutilated or altered on the ground that if received in its very terms it leads to an absurd or impracticable result.

Nor does this section, in the respect referred to, stand in this act as the only witness of the legislative intent, for section 12, in denouncing the penalty, repeats the language

already quoted, for its words are: "That if any person or persons shall, without license, * * * sell or cause, or knowingly permit to be sold, directly or indirectly, any ale, * * * under the quantity of one quart, if the same is drank in, on or about the premises where sold, then he or she offending shall forfeit and pay," &c. *Rev., p.* 495, § 63.

It follows, from this citation, that in order to sustain the judicial ruling now complained of, this latter section, like the former one, must be recast by the court so as to enlarge its operation, giving it a punitive force not embraced within its terms.

On the argument such an extension of the scope of this law was sought to be effected by a reference to the general terms of the thirteenth section, but it seems to me that it is perfectly obvious that the wide expressions referred to must be restricted in order to avoid the grossest absurdity. The language of this clause is: "That in addition to the penalties imposed in section 12 of this act, if any person or persons shall sell any of the liquors aforesaid, without license first had and obtained according to this act, or shall sell on Sunday, then such person or persons shall be held as the keeper or keepers of disorderly houses," &c. *Rev., p.* 495, § 64.

By the common rules of construction this language must be interpreted by a reference to the context of the statute and its general purpose. It cannot be accepted in its literalness, because it would convert into disorderly houses the places of business of every manufacturer and wholesale dealer in these liquors in the state; and the reference to the penalties imposed by the antecedent section implies, in a conclusive form, that the punishment denounced as additional was meant as a duplicated infliction for the doing of those things that were before defined and prohibited.

Even if there were doubts on this subject, still it would be entirely inadmissible for the court to amplify this law so as to take in cases which do not fall within its express terms. The legal rule has been often declared by this court, that in order to make an act which is not *malum in se* criminal, a

legislative purpose to that effect, clearly expressed, must be shown. Thus, in *Buck* v. *Danzenbacker*, 8 *Vroom* 359, it is said : " But it must be borne in mind that the act in question is penal in its character, and should therefore receive a strict construction. A penal statute can never be extended by implication, and a case which does not come within its words shall not be brought within it by construction. In such a statute the word ' and ' cannot be construed to mean ' or.' "

According to the rule thus declared, there was error in the judicial charge in the present case, inasmuch as it extended the prohibitory scope of the language of the statutory section in question.

Let the judgment be reversed.